UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | NO. 1:18-cr-10464-PBS |
| | ) | |
| JOSEPH CENTOLA | ) | |

**<u>SENTENCING MEMORANDUM</u>**

Mr. Centola is not the same person he was over a year ago when he walked out of the Coolidge Center. Today he is someone who is learning to be thoughtful and deliberate about his decisions. He is learning to accept help from those around him, and to reach out for support and guidance from counselors, therapists, and United States Probation. His progress over the last year reveals someone who will benefit from additional support in the community, and not someone who should return to a prison setting yet again.

For the reasons that follow, this Court should accept the recommendations of both the government and the defense, and sentence Mr. Centola to a period of home confinement, while allowing him to continue to work and attend therapy, treatment, and job training. Mr. Centola is already on supervised release in Docket No. 09-cr-10138-RGS, therefore any additional supervision in the instant matter is unnecessary. Such a sentence is consistent with the factors described in 18 USC § 3553(a). The result will be a sentence that is sufficient, but not greater than necessary, to effectuate the purposes of sentencing. <u>United States v. Kimbrough</u>, 128 S.Ct. 558 (2007); <u>United States</u>

1

v. Booker, 125 S.Ct. 738 (2005); United States v. Martin, 520 F.3d 87 (1st Cir. 2008); United States v. Rodriguez, 527 F.3d 221 (1st Cir. 2008).

The facts of this case are not unlike many other walkaway escapes from halfway houses.  In January 2018, Mr. Centola walked out of the Coolidge House. A staff person refused to allow him to leave on a pass for work, and Mr. Centola's reaction was to leave. He contacted his probation officer the next day, but when faced with the prospect of returning to prison, he did not go back to turn himself in.  In March 2018, he was picked up at a friend's house and returned to prison to complete his sentence. In May, 2018, he began his period of supervised release.

Over the last year, things have finally started to click for Mr. Centola. On June 7, 2019, Joseph Centola graduated from the "Work Ready and Computer Skills Training Program" at Project Place in Boston. Following this graduation, he immediately secured employment, working nights at Home Depot. His case worker describes Mr. Centola as "very motivated to do well." He also remarked on Mr. Centola's eager participation in the program and desire to follow through with all expectations. See, exhibit A.  This graduation is an enormous source of pride for Mr. Centola, who has not experienced this kind of positive feedback frequently in his life.

Mr. Centola has noticed a change in himself over the last year. He has consistently had difficulty trusting other people and always had a hard time asking for help. Over the last year, he experienced positive outcomes from both. He opened his arms to receiving help from U.S. Probation, and has a positive

relationship with his probation officer. He trusts his probation officer. Further, he is addressing a variety of mental health needs. See PSR ¶ 87. His experience in Project Place marks a culmination of a year of new steps and new choices.

The defense and the government urge the court to follow the recommendations in the plea agreement, and sentence Mr. Centola to a period of home confinement, with conditions to continue to follow through with his required conditions of supervised release in 09-cr-10138-RGS. In other words, Mr. Centola should be ordered to continue to comply with the employment, training, and mental health conditions, and to have an opportunity to continue these important services.

This sentence is supported by the 3553(a) factors. This memorandum is supported by Exhibits A and B.

### A. Plea Agreement, Advisory Guidelines, Presentence Report

In March, 2019, Mr. Centola pled guilty to the one-count Information charging Escape in violation of 18 U.SC. § 751(a). Both parties agree that the sentence in this case should include home confinement and no period of isolation behind bars. Rather, Mr. Centola should continue to work on himself in the community with the guidance of U.S. Probation.

The United States Probation Department's calculation of the guidelines range in this case is as follows:

- A base offense level of 13, pursuant to § 2P1.1(a)(1);

• A 4 level reduction pursuant to § 2P1.1 (B)(3) as the "escape" was from a community corrections facility and Mr. Centola did not voluntarily return as he was obligated to;

• A two-level reduction pursuant to § 3E1.1 (a), rendering a total offense level of 7.

Mr. Centola agrees with the calculation of the total offense level (7). Mr. Centola asserts that his criminal history category (VI) overstates the seriousness of his criminal history. While the U.S.S.G. may allow the convictions in paragraphs 36 to "count", the fact that Mr. Centola was only 17 when he was convicted of these offenses should give pause. Similarly, the fact that these convictions occurred 20 years ago should limit the weight the court places on them. Absent inclusion of this conviction, Mr. Centola's criminal history category is V with 11 points. His advisory guideline range is then properly calculated at 12-18 months.

Mr. Centola also received a 2-level adjustment for being under a criminal justice sentence at the time of the offense. Mr. Centola objects to the increase, as it is part and parcel to the offense of escape (he was serving a sentence and walked away from the halfway house prior to completion). Absent that 2-level adjustment his advisory guideline range would be 8-14 months.

The Guidelines also provide room for a downward departure based on an over-representation of criminal history category, USSG § 4A1.3(b)(1). Here, the unique circumstances of these convictions (age and length of time since)

should factor into how the Court views them for increasing Mr. Centola's criminal history category.

The Court can also take these factors into consideration as it evaluates the 3553(a) factors and what is an appropriate sentence for Mr. Centola today, in 2019.

## B. 3553(a) Factors: History & Characteristics, Nature of the Offense

The nature of the offense is straightforward: Joseph Centola walked away from the Coolidge House on January 24, 2018. He had been living at the halfway house for about two months, completing the last portion of his 84 month federal sentence. While serving the federal sentence, Mr. Centola received treatment for cancer, including surgery while in custody in Kentucky. He continues to experience physical pain from tumors in his body, as well as the stress that the cancer will return. PSR ¶ 76-77. While in custody, Mr. Centola kept busy. He worked in the facility, participated in anger management and parenthood classes, as well as regular mental health counseling. PSR ¶ 86. On November 28, 2018, Mr. Centola was transferred to the Coolidge House to serve the remainder of his sentence.

Between November and January 2017-2018, Mr. Centola did his best to adjust to life after prison. He quickly became employed as a full-time janitor for State Garden in Chelsea. PSR ¶107. He followed the conditions of the Coolidge House and earned a good wage. In late January he had a new employment opportunity at TD Garden, and he was very excited about the prospect. He submitted his request to leave the Coolidge House to go to work, but was

refused. Mr. Centola reacted poorly when confronted with the obstacle of not being allowed to leave the center for employment. He felt that even when he was trying to do the right thing by working, there was something in his way, preventing him from achieving it.  In addition to this frustration, Mr. Centola had been experiencing a great deal of stress and personal loss in his life. See ¶ 58, 65. Over the last several months, he lost both his father and sister. At this point, he did not yet have a regular therapist to help him process everything that was happening in his life: the adjustment from prison, the loss of family members, and dealing with day to day stress in a halfway house.

The day after he walked away from the center, he told his probation officer about what happened at the Coolidge House. The Coolidge House would not allow him to return after he left. The only option at that point was a return to prison.  In those moments, Mr. Centola determined he could not face returning to a prison setting. Instead, he left the area and went to stay with a friend. A warrant issued, and a little over a month later, he was located at her residence in New Hampshire. Certainly, there was nothing aggravated about the offense as compared to other Escape cases.

He completed the remainder of his sentence in jail, and started on supervised release in May, 2018. Three months later, when he was doing well on supervised release, and compliant with the requirements of federal probation, he was charged with Escape. The government recommended release, and Mr. Centola continued to work on his probation requirements and to focus on rehabilitation.

Mr. Centola's history and characteristics must be looked at in full context, with a focus on where he is at in his life at this moment. Mr. Centola, undoubtedly, has a long history of theft offenses. The overwhelming majority of his criminal history relates to stolen motor vehicles. The most serious offense is the federal sentence that relates to this conviction. For the offense, he served a significant sentence, and is now doing well on supervised release (this conviction for Escape is not a violation of his supervised release in that matter). While incarcerated for that offense, Mr. Centola underwent a significant medical diagnosis and treatment (¶76, 77). He continues to receive treatment for these conditions, and his perspective on his life and his choices has shifted. Most significantly, Mr. Centola is better able to process his daily stress with the assistance of counseling, and he has noticed a difference in how he responds to challenging situations. Mr. Centola is getting a great deal out of therapy, and continues to work with his doctor on the hard on issues related to suffering from PTSD. ¶86-87.

Mr. Centola has a long history of substance dependence and addiction. Mr. Centola experienced many stressors over the last year that could have resulted in a serious relapse. Instead, he continues to make his sobriety a priority in his life. He relies on community services for continued support and treatment. PSR ¶ 101.

Mr. Centola's sister noticed a change in her brother since his release. She describes him as more "mature" and that her family has "never seen him

try harder to be successful." Mr. Centola's entire family is impressed with his active participation in job training, therapy, and self-help. ¶ 69A.

### C. Home Confinement Achieves the Sentencing Goals

A sentence of incarceration is not appropriate when considering all of the sentencing criteria and looking at the circumstances of this case. A sentence that includes no active incarceration, but a period of home confinement instead, is not out of line with how courts in this district have sentenced defendants convicted of escape. In short, sentences well below the guidelines are common.

A review of the applicable sentencing data for walk-away escapes shows that sentences of the nature called for by the guidelines in this case are not imposed. *See United States v. Clark,* 15-10049-NMG (4 month sentence for walk-away from Coolidge House where defendant was on escape status for 2 months); *United States v. Natal,* 16-10196-RWZ (1 day sentence for walk-away escape from Coolidge House; sentence given to compensate for the 1 year of good time defendant lost as a result of the escape); *United States v. Barreto,* 16-10175-RGS (1 year and 1 day sentence for walk-away escape from Coolidge House for defendant who was on escape status for 7 months during which he reverted to drug use); *United States v. Castro,* 10-10385-JLT (time served – roughly 3 month sentence - for walk-away escape from Coolidge House where defendant was on escape status for 3 days). [1]

---

[1] The relatively few escape cases brought in this district is reflective of the fact that offenses such as walking away from a halfway house are rarely separately prosecuted. The government often relies instead on administrative measures such as loss of good time and reclassification to a higher security institution.

Mr. Centola has spent a great deal of his life in and out of trouble. His struggles include addiction, medical conditions, and his mental health. Over the course of the last year, Mr. Centola made significant progress in several important areas: mental health, job training, and employment. He has a safe and stable residence living with his sister. A return to a prison setting will do little at all to satisfy the sentencing criteria. In fact, the community will benefit far more from allowing Mr. Centola to continue on the positive path he is on, focusing on his rehabilitation.

### D. Conclusion

Here, both parties agree that Mr. Centola should not return to a prison setting. A sentence that sends him back to prison is greater than necessary to achieve the sentencing goals

Respectfully Submitted,

JOSEPH CENTOLA
By His Attorney,
*/s/ Cara McNamara*
Cara McNamara
AK Bar No. 0511088 Assistant
Federal Defender 51 Sleeper
Street
Boston, MA 02210
617-223-8061

### CERTIFICATE OF SERVICE

I, Cara McNamara, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) on June 18, 2019.

*/s/ Cara McNamara*
Cara McNamara